UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RHONDA OVIST,<br><br>    Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP,<br><br>    Defendants. | CIVIL ACTION<br><br>No. 4:17-cv-40113-TSH |

## REPORT AND RECOMMENDATION

**February 21, 2020**

Hennessy, M.J.

  Plaintiff Rhonda Ovist brought suit against defendants Unum Life Insurance Company of America and Unum Group (together "Unum") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Before this court are the parties' cross-motions for summary judgment. For the reasons set forth below, the undersigned recommends that Defendants' motion [Dkt. No. 58] be GRANTED and Plaintiff's motion [Dkt. No. 61] be DENIED.

**I. BACKGROUND**

  **A. The Parties**

  Ovist, a resident of Florida, was employed as a professor by Rollins College from approximately 1999 to 2010. Beginning on April 1, 2009, Ovist became eligible to participate in Rollins College's long-term disability ("LTD") plan, which was funded by a group policy issued by Unum. Unum served as the LTD plan's claims administrator for Rollins College.

1

**B.     The Policy**

Unum issued policy No. 69040 002, a group LTD plan to Rollins College effective April 1, 2009 ("the Policy"). [0001]. The Policy is governed by ERISA. [0001]. Independent of additional requirements, a covered employee is "disabled" under the Policy when:

- [The employee is] *limited* from performing the *material and substantial duties* of [her] *regular occupation* due to [her] sickness or injury; and
- [The employee has] a 20% or more loss in [her] *indexed monthly earnings* due to the same sickness or injury.

[0014 (emphasis in original)].

Even if a covered employee is disabled under the Policy, the Policy places limits on the employee's entitlement to benefit payments in certain situations:

> The lifetime cumulative maximum benefit period *for all disabilities due to mental illness and disabilities based primarily on self-reported symptoms* is 24 months. Only 24 months of benefits will be paid for any combination of such disabilities even if the disabilities:
> - Are not continuous; and/or
> - Are not related

[0022 (emphasis added)].

The Policy defines "self-reported symptoms" ("SRS") as "the *manifestations* of your condition which you tell your physician, *that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine*. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy." [0035 (emphasis added)].

The Policy also states that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." [0010]. "Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing

2

the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim." [0042].

    **C.**    **Unum's Review and Denial of Ovist's Claim**

In August 1999, Ovist began working for Rollins College as a professor. [0337]. As early as 2003, Ovist was diagnosed with chronic fatigue syndrome with the possibility of fibromyalgia. [2995, 2998]. In January 2011, Ovist became disabled. [0187]. Her last position at Rollins College was as a full-time faculty professor, which paid a yearly salary of $67,524.00. [0337]. Ovist became disabled due to fibromyalgia, chronic fatigue syndrome, opioid dependence and withdrawal symptoms, chronic sinus infections, Chlamydophila pneumonia, and cytomegalovirus disease which she contends caused her extreme fatigue, chronic pain, difficulty with concentration, memory, and cognitive issues. [0046]. She was prescribed numerous medications to treat her symptoms. [0225-0249].

On December 13, 2010, Rollins College approved Ovist's request for family medical leave act/short term disability for the period of January 9, 2011 to May 31, 2011. [0053]. On April 29, 2011, Ovist filed a claim under the Policy for benefits to begin June 1, 2011. [0041-0049]. On September 1, 2011, Freeman Broadwell, M.D., a physician consultant for Unum, reviewed Ovist's medical records. [0543-0544]. Dr. Broadwell opined that Ovist was disabled under the Policy "due to the consistency of [Ovist's] reports corroborated by [Ovist's] providers and absent evidence to the contrary, restrictions and limitations of no work are supported at this time." [0544]. On September 13, 2011, Unum approved Ovist's benefits under the Policy because of Ovist's symptoms related to her medical condition of chronic fatigue syndrome. [0554-0558]. Unum notified Ovist that the Policy limited her benefits to a twenty-four-month period ending June 29, 2013 due to the SRS limitation. [0555, 0559].

Subsequent to the initial approval of her claim and throughout the claim's administration, Unum required Ovist to submit claimant statements and attending physician statements. Unum received medical records from Ovist and her treating physicians, including: Sheril Stansberry, M.D. [2971-2993]; Alexander Jungries, M.D., of the National Pain Institute 3276-3411; Nancy Klimas, M.D., of the Chronic Fatigue Center [861, 2829-2848, 3520-3563, 3655-3682]; Kent Hoffman, D.O., P.A., of Lake Howell Health Center [3447-3487, 3771-3805]; Mary-Catherine Segota, PsyD., P.A. [2097-2103, 3614-3616]; Irina Rozenfeld, MSN, ARNP, of the Institute for Neuro Immune Medicine [3724-3731]; Michael Potts, M.D., of the Central Florida Cardiology Group [3715-3723, 3738-50]; I. Cori Baill, M.D., of the Menopause Center [0540-0541, 3560-3609]; Debra Dube, M.D., of the Internal Medicine Connection [3733-3737]; Rohini Bajaj, M.D. of Florida Gastroenterology [3841-3846]; and John Hudson, M.D. [2912-2961, 3013-3039, 3040-3274, 3593-99, 3610-12].

On September 14, 2012, the Social Security Administration found Ovist disabled. [0939-0944, 3636]. On December 17, 2012, in an internal note, Unum decided that Ovist's benefits would conclude on June 29, 2013 because of the SRS limitation. [1071-1073]. On June 11, 2013, Unum informed Rollins College and Ovist that it was reviewing Ovist's medical records and would continue to pay benefits while the review was ongoing. [1705-1707, 1717]. Unum reiterated that the twenty-four-month limitation remained in effect. [1706]. On July 19, 2013, Tony Smith, M.D., a physician consultant for Unum, opined that Ovist's diagnoses of chronic fatigue syndrome, fibromyalgia, chronic pain syndrome, and opioid dependence prevented Ovist from working. [1755]. Dr. Smith further opined that Ovist's improvement is "reasonable and expected." [1755]. Dr. Smith suggested that Unum review Ovist's file in eight to twelve months. [1755]. On July

22, 2013, Unum extended Ovist's benefits for a period of eight to twelve months past the original June 29, 2013 end date.[1] [1758].

On June 20, 2014, Ovist's extension expired and Unum reviewed Ovist's claim to determine continued entitlement to benefits. [1796]. On August 5, 2014, Unum informed Ovist of its review. [1794]. On September 5, 2014, Unum informed Ovist that her benefits would continue until October 27, 2026, subject to continued medical documentation. [1808-1811]. On November 14, 2014, Unum informed Ovist that it continued to review whether the SRS limitation applied to her claim. [2092-2093]. On December 17, 2014, legal counsel for Unum stated that the United States Court of Appeals for the Eleventh Circuit does not have binding precedent which would preclude application of the SRS limitation to Ovist's claim. [2297].

On December 30, 2014, Sarah Curran, R.N., a nurse consultant for Unum, completed a review of Ovist's medical records on behalf of Unum. [2299-2304]. Nurse Curran concluded that Ovist was unable to perform full-time work, but that there were no diagnostic findings in Ovist's file which would "equate to the level of her impairment." [2303]. On January 21, 2015 and February 5, 2015, Dr. Hoffman, Ovist's primary care physician, wrote that Ovist's disabling symptoms could be attributed primarily to fibromyalgia and chronic fatigue syndrome. [2349, 2354]. On February 5, 2015, Bryan Hauser, M.D., a physician consultant for Unum, opined that Ovist was precluded from work as a result of her fibromyalgia and chronic fatigue syndrome. [2354]. Dr. Hauser continued by stating that "[t]he diagnoses of fibromyalgia and chronic fatigue syndrome cannot be verified or confirmed by clinical signs (physical examination findings not dependent on the patient's report) and/or diagnostic test findings." [2354]. On February 17, 2015,

---

[1] In Unum's January 27, 2016 appeal denial letter, it stated that the reason for not limiting benefits in 2013 was because "benefit payments continued while [Unum] requested the SSA File, which was necessary to better understand the basis for [its] disability determination." [3993].

5

after reviewing Ovist's claim and medical records, Unum closed Ovist's claim due to exhaustion of benefits under the SRS limitation. [2358-2362]. Unum determined that Ovist was unable to work due to her symptoms related to fibromyalgia and chronic fatigue syndrome which had impaired her since her original date of disability. [236323-64, 2366-2373].

On February 24, 2015, Dr. Klimas, Ovist's physician, provided Unum with a letter stating that Ovist's disability could be attributed to chronic fatigue and immune deficiency syndrome and suspected mold exposure. [2395-2396]. On March 6, 2015, Unum informed Ovist that it would continue to review Ovist's claim after receiving Dr. Klimas' letter. [2398, 2406]. On April 14, 2015, after attempting to contact Dr. Klimas and reviewing Ovist's new medical evidence, Dr. Hauser concluded that Ovist's limitations were not diagnostically verifiable. [2410-2415]. On April 16, 2015, James Bress, M.D., performed an independent analysis of Ovist's limitations. [2417-2419]. Dr. Bress agreed with the conclusion of Dr. Hauser and Nurse Curran. [2419]. Dr. Bress disagreed with Dr. Klimas' opinion because he found that many of Dr. Klimas' tests could not confirm Ovist's symptoms. [2418]. On April 17, 2015, Unum informed Ovist that it would not change its prior decision and provided an explanation for its decision. [2421, 2423-2428].

On July 2, 2015, Ovist submitted additional information about mold exposure to support her request to reverse Unum's decision. [2513-2514]. On July 8, 2015, Unum informed Ovist that it would consider the newly submitted evidence in a review of the decision before processing Ovist's appeal. [2522]. On July 13, 2015, Dr. Hauser reviewed Ovist's medical and clinical evidence, including the new documents. [2537-2538]. Dr. Hauser determined that there existed no proven association between Ovist's symptoms and exposure to mold contamination or elevated levels of fungal spores. [2538]. On July 14, 2015, Dr. Bress concurred with Dr. Hauser's opinion. [2541]. On July 14, 2015, Unum informed Ovist that it would not reverse its prior decision to

discontinue benefits. [2544-2549]. On July 15, 2015, Unum referred Ovist's claim to its appeals department. [2550-2551, 2558-2559]. Unum permitted Ovist to submit evidence in support of her appeal until December 15, 2015. [3937-3938].

On January 6, 2016, Angela D. Malan-Elzawahry, R.N., a member of Unum's appeals department, reviewed Ovist's medical records. [3966-71]. Nurse Malan-Elzawahry concluded that Ovist's "conditions that are identified by testing, such as thyroid goiter, a joint effusion, and anterior cardiac wall soft tissue attenuation are not correlating with symptoms that are at a severity to limit [Ovist's] function." [3971]. Nurse Malan-Elzawahry deferred to Unum's independent medical reviewer for the remainder of her opinion. [3971]. On January 21, 2016, Scott Norris, M.D., independently reviewed Ovist's medical file. [3978-3982]. Dr. Norris concluded that Ovist's limitations were not verifiable by examinations and/or diagnostic testing/imaging. [3981]. On January 27, 2016, Unum denied Ovist's appeal. [3987-3996]. Unum did not refute Ovist's physical and functional limitations, and found her unable to work. [3991]. However, Unum found that her symptoms were not verifiable by tests, diagnostic procedures, or clinical examinations. [3991]. Thus, Unum denied benefits to Ovist because the SRS limitation placed a maximum benefit period of twenty-four months for disabilities based primarily on SRS. [3993]. Unum concluded that Ovist's entitlement to disability benefits ended on June 29, 2013. [3993].

### D. Procedural History

Ovist timely filed her claim in this court on August 2, 2017. [Dkt. No. 1]. On June 27, 2018, this court denied Unum's motion to transfer venue to the United States District Court of the Middle District of Florida. [Dkt. No. 24]. On August 30, 2019, the parties filed cross-motions for summary judgment. [Dkt. Nos. 58, 61]. The parties' motions are ripe for adjudication.

## II.     STANDARD

"[I]n an ERISA case[,] where review is based only on the administrative record before the plan administrator . . ., summary judgment is simply a vehicle for deciding the issue." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). "[T]he district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Leahy v. Raytheon Co., 353 F.3d 11, 18 (1st Cir. 2002).  As such, "the factual determination of eligibility for benefits is decided solely on the administrative record, and 'the non-moving party is not entitled to the usual inferences in its favor.'" Bard v. Boston Shopping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006) (quoting Orndorf, 404 F.3d at 517).  Instead, "[the claimant] bears the burden of making a showing . . . that the benefit termination was unreasonable." Terry v. Bayer Corp., 145 F.3d 28, 34 (1st Cir. 1998).

Additionally, where the administrator of an ERISA plan is imbued with discretion in the interpretation and application of plan provisions, its use of that discretion must be accorded deference.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Here, it is undisputed that Unum had discretion to interpret the terms of the Plan. [Dkt. No. 62, Ovist's Summary Judgment Memo., at p. 3 ("Unum should be able to show it has discretion.")].  Therefore, this court must "uphold [Unum's] decision unless it is arbitrary, capricious, or an abuse of discretion." Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 698 (1st Cir. 2007).  "[T]he existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004).

Unum concedes that Ovist was and remains disabled under the terms of the Policy.  [0014 (among other terms, the Policy defines "disabled" as when "[the employee is] limited from

performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury.")]. Unum, interpreting and applying the provisions of the Plan, argues that Ovist's benefits expired on June 29, 2013 because the SRS limitation required Unum to pay only twenty-four months of payments. Ovist contends that Unum's termination of benefits was arbitrary and capricious for two main reasons. First, she argues that Unum erroneously applied the SRS limitation. Second, she argues that Unum suffered from a structural conflict of interest when it terminated benefits. The undersigned reviews Ovist's arguments for reversal in light of the applicable standard.

### III. DISCUSSION

#### A. Plaintiff Bears the Burden to Prove Entitlement to Benefits

As noted above, claimants usually have the burden in ERISA denial cases. See Terry, 145 F.3d at 34. Despite this general rule, Ovist argues that Unum has the burden to show that the SRS limitation applies because the SRS limitation provision is a disguised exclusion of benefits clause. See Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004) ("[A]n insurer that wishes to defend its denial of benefits by relying on an *exclusion clause* has the burden of proving that that clause, strictly construed, is applicable.") (emphasis added). However, other courts analyzing Unum's LTD policies have found that its policies' limitations of benefits provisions are different than exclusion clauses. See Seaman v. Memorial Sloan Kettering Cancer Center, 08-CV-3618 (JGK), 2010 WL 785298, at *10 (S.D.N.Y. Mar. 9, 2010) ("[Plaintiff's] disability is not a condition excluded from coverage, as evidenced by the fact that First Unum did pay 24 months of benefits and readily acknowledges that those payments were proper."); see also Hoffman v. Life Ins. Co. of N. Am., 13-CV-2011 (JGB) (SP), 2014 WL 7525482, at *5 (C.D. Cal. Dec. 29, 2014) ("exclusions . . . deal with total denials from coverage – in other words, no benefits

were paid."). The undersigned agrees with this analysis. Unum paid Ovist approximately four years of benefits under the Policy before the SRS limitation resulted in the termination of benefits. Though Unum did limit Ovist's benefits, it did not exclude her from them. The burden shifting justification espoused in Kamerer v. Unum Life Ins. Co. of Am., 334 F. Supp. 3d 411, 428 (D. Mass. 2018), is also not applicable where Unum notified Ovist throughout its claim review that it intended to apply the SRS limitation. [0555, 0559, 1706, 2092-2093]. Therefore, the burden remains on Ovist to show her entitlement to benefits beyond the payments she received.

### B. Unum's Application of the SRS Limitation

The Policy limits coverage for "disabilities based primarily on self-reported symptoms" to twenty-four months. Unum concedes that the symptoms associated with Ovist's diagnoses of fibromyalgia, chronic pain syndrome, and chronic fatigue syndrome render her disabled under the Policy. Unum's denial letters to Ovist consistently reflected this concession. However, in Unum's denial letters, Unum also wrote that "these diagnoses could not be verified or confirmed by physical examination findings that are not dependent on your report and cannot be verified or confirmed by diagnostic test findings. These diagnoses are considered self reported and your policy limits benefit payments to a maximum of 24 months."[2] [2424, 2545]. As there is no dispute that Ovist is disabled, Unum's argument for summary judgment is that, per the Policy and its authority to interpret and apply the Policy's provisions, Unum was obligated to provide Plaintiff with LTD benefits for only twenty-four months because the symptoms associated with these diagnoses are subject to the SRS limitation.

---

[2] Despite the undersigned's discussion *infra*, Unum's letters denying benefits do not entirely reflect the diagnosis-disabling symptom distinction which Unum relies on for summary judgment. However, there is evidence in the record that Unum applied the distinction accurately in its review of Ovist's claim and that Ovist was aware of the distinction's effect on her continued eligibility for benefits. [2299-2304, 2395-2396].

Ovist contends that the application of the SRS limitation to her case was arbitrary and capricious. Specifically, she argues that the record includes objective diagnostic testing which renders the SRS limitation inapplicable to her claim. See Denmark v. Liberty Life Assurance Co. of Bost., 481 F.3d 16, 37 (1st Cir. 2007), vacated on other grounds, 566 F.3d 1 (1st Cir. 2009) ("[I]t [is] unreasonable for an insurer to require objective evidence to support a diagnosis of a condition that is not subject to verification through laboratory testing."). Ovist relies on the trigger-point test performed by a treating physician and recognized in the medical field as a diagnostic tool for fibromyalgia.[3] [1287, 3278]. Dr. Norris, Unum's independent reviewing physician on appeal, did not dispute the relevance of this test. [3980 ("[e]xaminations described variable nonspecific joint/muscle tenderness w/ up to 18/18 positive tender points.")]. In addition to the trigger-point test, Ovist cites other clinical examinations she asserts diagnostically prove her conditions' symptoms. [2596 (letter from Dr. Klimas citing tests allegedly providing objective evidence of post-exertional malaise); 3868-3898 (results of a cardiopulmonary exercise test which allegedly provides objective evidence of decreased cognitive ability)]. Dr. Bress and Dr. Norris did not agree with the accuracy of these tests or that they provided objective evidence of disabling symptoms. [2418, 3981-3982].

Though this issue of SRS limitation provisions is novel in this district, one court in this circuit has decided a near identical case. See Decorpo v. Unum Life Ins. Co. of Am., 13-CV-484 (LM), 2014 WL 4794345, at *7-8 (D.N.H. Sept. 25, 2014). In Decorpo, as in this case, Unum

---

[3] Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003). The record is not clear as to Ovist's exact score on the trigger-point test or whether the physician performed "control testing." [1287, 2418, 3278, 3980]. "Control testing" can assist person's reviewing the trigger-point examination "determine the reliability and specificity of the tender point exam." Weitzenkamp v. Unum Life Ins. Co. of Am., 661 F.3d 323 (7th Cir. 2011). The actual score of Ovist's test results is not dispositive because Unum concedes that Ovist's diagnosis of fibromyalgia was clinically proved.

11

conceded that the plaintiff was disabled under the LTD policy and that the plaintiff was positive for fibromyalgia on the trigger-point test. Though the Decorpo Court found that the trigger-point test "may provide some level of objectivity in diagnosing and assessing fibromyalgia . . . Unum [was] entitled to insist on objective evidence that the fibromyalgia renders [the plaintiff] unable to work." Id. at *8. Thus, for the Decorpo Court, the diagnosis of fibromyalgia was not dispositive for whether the SRS limitation provision applied. Rather, the plaintiff's failure to present "objective medical evidence that the fibromyalgia render[ed] Decorpo unable to work" permitted Unum to invoke the twenty-four-month benefit cap. Id. at *8.

For this case, the undersigned agrees with the Decorpo Court's analysis that "[t]he First Circuit . . . has seemingly endorsed [the trigger-point test] . . . as an objective evaluation tool [for the diagnosis of fibromyalgia]." Id. at *7 (citing Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009) (per curiam)); see also Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 919 (7th Cir. 2003) ("[Fibromyalgia] can be diagnosed more or less objectively by the 18-point test . . .."); Russell v. Unum Life Ins. Co. of Am., 40 F. Supp. 2d 747, 751 (D.S.C. 1999) (describing the trigger-point test as an "objective factor[] to diagnose fibromyalgia"). Yet, the undersigned also agrees with the Decorpo Court's discussion that a positive trigger-point test is not dispositive of whether a plaintiff is entitled to benefits under a LTD benefits plan with a SRS limitation provision.

In Denmark v. Liberty Life Assurance Co. of Boston, a case relied on by the Decorpo Court, the First Circuit upheld an insurer's decision to deny benefits to a claimant diagnosed with fibromyalgia. 481 F.3d at 16. The Denmark Court "[drew] a distinction between requiring objective evidence of the diagnosis, which is impermissible for a condition such as fibromyalgia that does not lend itself to objective verification, and requiring objective evidence that the plaintiff

is unable to work, which is allowed." Denmark, 481 F.3d at 37 (citing Boardman v. The Prudential Ins. Co. of Am., 337 F.3d 9, 16-17 (1st Cir. 2003)).  This approach – that an insurer must accept a claimant's diagnosis of fibromyalgia with evidence of a positive trigger-point test, but that the same trigger-point test is not proof of the limitations such symptoms cause – was similarly considered by the First Circuit in a prior case.  See Boardman, 337 F.3d at 16-17 ("While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.").

      Here, the Policy limits a claimant's entitlement to benefits "for all . . . disabilities based primarily on self-reported symptoms."  [0022].  In turn, the Policy defines "self-reported symptoms" as "the *manifestation* of your condition which you tell your physician, *that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine*."  [0035 (emphasis added)].  The Policy's focus on the "manifestation" of the condition which renders a claimant unable to work as the aspect which determines whether the SRS limitation applies is consistent with the First Circuit's distinction between diagnosis and disabling symptoms.  Unum accepted Ovist's conditions of fibromyalgia, chronic fatigue syndrome, and chronic pain syndrome based on diagnostic testing which the First Circuit recognizes as objective. [3980].  However, the disabling symptoms associated with those diagnoses which prevented her from working – *e.g.* fatigue and pain – are still based on Ovist's self-reporting.  Indeed, the Policy lists pain, fatigue, soreness, and loss of energy as examples of non-verifiable "manifestations;" the

list does not include diseases as examples.[4]  [0035].  Accordingly, where Unum has discretionary authority to interpret its policy, Unum's decision to apply the SRS limitation to Ovist's claim cannot be deemed arbitrary and capricious based on First Circuit precedent and the plain language of the Policy.  See Decorpo, 2014 WL 4794345, at *7-8.

In opposition, Ovist argues that the application of this diagnosis-disabling symptoms distinction is *per se* unreasonable and relies on other courts which have held that a diagnosis of fibromyalgia based on a positive trigger-point test is not subject to Unum's SRS limitation.[5]  See, e.g., Weitzenkamp v. Unum Life Ins. Co. of Am., 661 F.3d 323 (7th Cir. 2011).  In Weitzenkamp, the Seventh Circuit interpreted the identical SRS limitation provision in the context of that plaintiff's fibromyalgia diagnosis.  Id.  Unlike Decorpo, that court held that the SRS limitation provision must be read as applying "to disabling illnesses or injuries that are *diagnosed* primarily based on self-reported symptoms rather than to all illnesses or injuries for which the *disabling symptoms* are self-reported."  Id. at 330 (emphasis added).  In light of this interpretation of the SRS limitation provision, the pertinent question before the Seventh Circuit was whether the plaintiff's diagnosis of fibromyalgia was based primarily on self-reported symptoms or on objective medical evidence.  Id. at 331.  The Weitzenkamp Court found that the trigger-point test used to diagnose fibromyalgia qualified as a clinical examination standardly accepted in the practice of medicine, and thus ruled in favor of the plaintiff.  Id.

---

[4] Unlike the SRS limitation, the twenty-four-month benefit limitation for disabilities due to mental illness does identify diseases as examples within its definition. [0033]. Ovist concedes that similar benefit limitations for mental health disabilities have been found valid in the First Circuit. [Dkt. No. 67, Ovist's Oppo., at pp. 12-13]. Where, as here, Unum agrees that Ovist is disabled due to her mental health diagnoses, the undersigned finds those cases persuasive. See Dutkewich v. Standard Ins. Co., 781 F.3d 623 (1st Cir. 2015).

[5] Ovist also relies on Kamerer v. Unum Life Ins. Co. of Am., 334 F. Supp. 3d 411 (D. Mass. 2018) for support.  As noted above, the undersigned finds Kamerer distinguishable because here, the burden of proof is on Ovist, Unum is afforded deference to its policy interpretations, and Unum consistently notified Ovist of its intention to apply the SRS limitation. *See supra*, at pp. 3, 8-10.

In reaching its holding, Weitzenkamp expressly rejected the diagnosis-disabling symptom distinction that the undersigned relies on in this recommendation. The Weitzenkamp Court explained that "[f]or most illnesses or injuries, the disabling aspect is not the disease itself, but the pain, weakness, or fatigue caused by that illness or injury." Id. As such, to construe the limitation to apply where the disabling symptom of the illness or injury is self-reported "would sweep within the limitation virtually all diseases, leaving only a small subset for coverage beyond that time period." Id. Indeed, at oral argument in Weitzenkamp, Unum conceded that any objective diagnosis where the disabling symptom is pain would fall under the umbrella of its SRS limitation. Id. at 330-31. To further stress the breadth of the diagnosis-disabling symptom distinction, the Seventh Circuit noted that "diseases that are extremely likely to cause an inability to work, such as stage IV cancer or advanced heart disease, are disabling because of the pain, weakness or fatigue," but that "[u]nder Unum's interpretation, . . . those diseases would fall within the twenty-four-month limitation because pain, weakness and fatigue are self-reported symptoms that are difficult, if not impossible, to verify using objective medical evidence." Id. at 330. Though the undersigned finds this analysis persuasive, I am bound by the law of this circuit which endorses the diagnosis-disabling symptom distinction in the ERISA context. See Denmark, 481 F.3d at 37; Boardman, 337 F.3d at 16-17.

Though Unum's SRS limitation is expansive, the undersigned recognizes that ERISA "does not regulate the substantive content of welfare benefit plans." Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 732, (1985); see also United McGill Corp. v. Stinnett, 154 F.3d 168, 172 (4th Cir. 1998) ("[ERISA] does not mandate any minimum substantive content for [employee welfare benefit] plans"). As a result, "employers have large leeway to design disability and other welfare plans as they see fit." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003).

Though a different policy with a different limitation provision may require a different result, here, Rollins College agreed to a policy which significantly limited its disabled employees' entitlement to benefits when certain circumstances are present. Where Unum had discretion to interpret its own policy, nothing under ERISA or established First Circuit precedent prevented Unum from enforcing this broad SRS limitation in the instant case. This remains true even though Ovist will never be able to return to work because of her objectively diagnosed diseases. Thus, the undersigned recommends denying Ovist's motion for summary judgment and granting Unum's.

   **C.**  **Unum Provided Ovist with a Full and Fair Review of Her Claim**

Ovist argues that Unum's financial incentive to deny claims undermined its ability to act as an unbiased fiduciary with respect to the decision-making process, depriving her the right to a full and fair review. Thus, she contends that the court must reverse Unum's decision to discontinue her LTD benefits because the decision was tainted by the presence of an inherent conflict of interest.[6]

"The Supreme Court has held that, in the context of ERISA, when an entity both pays out benefits under a disability plan and administrates claims under that plan, it operates under a structural conflict of interest." Young v. Aetna Life Ins. Co., 146 F. Supp. 3d 313, 336 (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008)). When such a conflict exists, "the reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." Glenn, 554 U.S. at 108. "A conflict is 'more important . . . where circumstances suggest a higher likelihood that it affected the benefits

---

[6] Ovist primarily challenges Unum's interpretation and application of the SRS limitation to her claim as being tainted with structural bias. Ovist does not suggest that the same bias impacted Unum's findings which were favorable to her, including its finding that Ovist was disabled. Regardless of when and how the structural bias allegedly manifested, Ovist failed to meet her burden to show that Unum's decisions were influenced by its inherent conflict of interest.

16

decision.' On the other hand, the conflict 'prove[s] less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.'" Petrone v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson & Affiliated Cos., 935 F. Supp. 2d 278, 288 (D. Mass. 2013) (quoting Glenn, 554 U.S. at 117). The plaintiff "bears the burden of showing that the conflict influenced [the insurer's] decision." Cusson v. Liberty Life Assur. Co. of Bos., 592 F.3d 215, 225 (1st Cir. 2010), abrogated on other grounds by Montanile v. Bd. of Trs. of Nat'l Elevator Indus., 136 S.Ct. 651 (2016).

The record reflects that Unum employed procedures designed to reduce the impact of its structural conflict on the decision-making process. For instance, Unum retained two independent third-party physicians to review Ovist's claim file at each step of the review process. [2417-2419, 3978-82]. Dr. Bress and Dr. Norris both recommended terminating benefits under the SRS limitation. [2417-19, 3978-3982]. Despite Ovist's history of missed deadlines, Unum provided Ovist multiple extensions to submit and resubmit records she believed may support her claim for benefits. [3937-3938]. Additionally, Unum sent Ovist's appeal to its appeals department, to conduct a separate review of Unum's initial decision to terminate benefits. [2558-2559]. These measures limit the impact of the structural conflict. See Salvador v. Liberty Life Assur. Co. of Boston, C.A. No. 12-CV-30196 (MAP), 2014 WL 3749206, at *8 (D. Mass. July 28, 2014) (finding that referral of plaintiffs claim to an independent physician and use of separate appeals unit mitigated the impact of [the insurer's] structural conflict of interest).

Plaintiff's other arguments suggesting bias or conflict are unpersuasive. Richards v. Hewlett-Packard Corp., 592 F.3d 232, 241 (1st Cir. 2010) ("[A]n insurer is not required to physically examine a claimant."); Tsoulas v. Liberty Life Assurance Co., 454 F.3d 69, 80 (1st Cir. 2006) (approving insurer's reliance on surveillance evidence); Dickerson v. Prudential Life Ins.

Co. of Am., 574 F. Supp. 2d 239, 248 (D. Mass. 2008) (notice of benefit denials need only "provide[] [claimant] with an adequate basis upon which she could identify information that would be 'helpful' in her appeal."). "In some cases, a good reason has been found to exist when a party makes a colorable claim of bias." Denmark, 566 F.3d at 10. This is not one of those cases. Here, Ovist failed to present evidence that bias or conflict denied her the right to a full and fair review, and the undersigned does not recommend granting Ovist's motion because of Unum's structural conflict of interest.

## CONCLUSION

For the reasons set forth above, the undersigned recommends that Defendants' motion for summary judgment [Dkt. No. 58] be GRANTED and recommends that Plaintiff's motion for summary judgment [Dkt. No. 61] be DENIED.[7]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[7] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).